UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID STREETY,

Petitioner,

v.

RUSS RURKA,

Respondent.
______________________________/

Case No. 2:25-cv-13816

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS (ECF No. 1), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner David Streety, confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a second or successive petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court conviction for two counts of second-degree murder and being a fourth felony habitual offender. For the reasons below, the petition for a writ of habeas corpus will be **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

Streety was convicted following a jury trial in the Detroit Recorder's Court.[1]

[1] "In 1996, the Michigan Legislature abolished the Detroit Recorder's Court and merged its functions with the Wayne County Circuit Court." *Redmond v. Jackson,* 295 F. Supp. 2d 767, 769, n. 1 (E.D. Mich. 2003). This explains why Streety's

Both parties have presented extensive recitations of the facts in this case, as has the Wayne County Circuit Court in denying Streety's post-conviction motion for relief from judgment. *People v. Streety*, No. 96-001562-01-FC, at *1–12 (Wayne Cnty. Cir. Ct., Mar. 31, 2023), ECF No. 15-20 at PageID.2007–18. The state court opinion is "presumed to be correct" on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See, e.g., Simpson v. Warren*, 662 F. Supp. 2d 835, 841 (E.D. Mich. 2009). Accordingly, the Court gleans the material facts from the post-conviction court's opinion.

On October 3, 1996, Streety was convicted of two counts of second-degree murder by a jury. ECF No. 15-20 at PageID.2007. "The charges arose from the deaths of Carl Turner and William Bell in an automobile accident at the intersection of Canton and East Vernor in Detroit." *Id.* The prosecutor's theory was that Streety had been driving the Dodge Shadow that caused the crash. *Id.* at PageID.2007–08. According to this theory, Bell had been the front seat passenger in the Dodge Shadow. *Id.* at PageID.2008, 2016. Turner was killed when the Mercury Marquis he was driving was struck by the Dodge Shadow. *Id.* Selina Williams, a back seat passenger in the Dodge Shadow, was also injured in the accident. *Id.* at PageID.2008.

---

post-conviction motions were considered by the Wayne County Circuit Court rather than the Recorder's Court.

Williams testified that on the day of the crash, she was with Streety. ECF No. 15-20 at PageID.2008. Williams acknowledged she did not know Streety well, but around 2:00 A.M., Streety drove her and Bell to the west side of town to buy some drugs. *Id.* Around 2:15 P.M., Streety was driving the Dodge Shadow with Bell in the front passenger seat and Williams in the back seat, directly behind Bell. *Id.* Streety saw an undercover police car and began speeding, eventually hitting speeds over 100 miles per hour, according to Williams. *Id.* Streety drove through the intersection of Canton and Vernor, hitting Turner's vehicle. *Id.* Williams was knocked through the windshield and hit the ground, receiving serious injuries. *Id.* When the Dodge Shadow hit Turner's vehicle, Williams testified that Bell's head hit the dashboard. *Id.* Streety got out of the driver's seat and ran away. *Id.*

Ms. Williams acknowledged that she was high at the time of the collision, as the three were consuming crack cocaine and alcohol immediately before the collision. ECF No. 15-20 at PageID.2008. However, she was certain that Streety was the driver of the Dodge Shadow. *Id.* Williams admitted that she never attended a lineup or was shown any pictures of suspects, but stated there was no need to have any picture shown to her because she knew what she saw and she knew who Streety was. *Id.* at PageID.2009.

Andrew Hawkins testified that he witnessed the collision. ECF No. 15-20 at PageID.2009. Hawkins estimated that "a green car"—the Dodge Shadow—had been

going about 90 miles per hour. *Id.* Hawkins lost control of his car while trying to avoid the collision and ended up "across the street by the hedges across Canton." *Id.* at PageID.2010. Before police arrived, Hawkins got out of his car to see if he could help; he observed a man in the Mercury Marquis, still belted, with his head in the back seat and his feet on the driver seat. *Id.* Hawkins saw a woman who had been in the Dodge Shadow—Williams—lying on the ground on the opposite side of the vehicle. *Id.* Hawkins saw a man in the passenger seat of the Dodge Shadow—Bell—with his head bowed down. *Id.* Hawkins never saw the driver of the Dodge Shadow exit the car because his view had been blocked by the hedges when he got out of his car. *Id.*

Police Officer Sylvia Perry testified that on the day of the crash at about 2:30 P.M., she was around Canton and Vernor Streets regarding a report of stolen cars in that area. ECF No. 15-20 at PageID.2010. Officer Perry saw a dark green Dodge Shadow parked on the east side of Canton. *Id.* She observed a woman and two men enter the car. *Id.* One of the men got in the front passenger seat and the other man drove the vehicle. *Id.*

Officer Perry and her partner followed the Dodge Shadow. ECF No. 15-20 at PageID.2010. When the Dodge Shadow went into the parking lot of a business, Officer Perry and her partner activated their overhead lights to investigate that car as a possible stolen vehicle. *Id.* A truck blocked their view for about 30 seconds. *Id.*

When they regained sight of the Dodge Shadow, it was speeding southbound on Canton. *Id.* at PageID.2010–11. Although they were not directly behind the Dodge Shadow, Officer Perry saw the Dodge Shadow run two stop signs and then collide with a brown Mercury Marquis. *Id.* at PageID.2011. The Dodge Shadow was going about 65 miles per hour at the time. *Id.* After the Dodge Shadow collided with the Mercury Marquis, the Mercury Marquis seemed to hit a utility pole. *Id.* Officer Perry saw the driver of the Marquis "hanging from the passenger side." *Id.* Officer Perry noticed Williams lying on the ground moaning, in and out of consciousness. *Id.* Bell was pushed up against the dashboard of the Dodge Shadow, nonresponsive. *Id.*

Officer Perry testified that although she did not see the driver of the Dodge Shadow leave the car, she did see a Black man wearing a bloody grey sweatshirt running away from the scene and hopping fences. ECF No. 15-20 at PageID.2011. Officer Perry testified that when she looked in the Dodge Shadow, she saw blood on both the driver's side and passenger's side of the dashboard. *Id.*

Officer Ivan Brewster, a canine handler, was dispatched to meet two other police vehicles after the fatal accident. ECF No. 15-20 at PageID.2011. When he arrived at the scene, he learned that the driver of the vehicle had run away and had been seen jumping over a 6-foot fence. *Id.* at PageID.2011–12. Officer Brewster understood the suspect was a Black male in his mid-20s, wearing a green jacket and grey sweatshirt and blue jeans, and that he was bleeding. *Id.* at PageID.2012.

Officer Brewster took his dog, Rusty, to the driver's side of the green Dodge Shadow to give her the scent of the seat and a scarf that was lying on the seat. ECF No. 15-20 at PageID.2011–12. Rusty led Officer Brewster into a backyard. *Id.* at PageID.2012. Officer Brewster saw a "fingerprint and a knee print in the grass," and he restarted Rusty on a track from that point. *Id.* The dog tracked across Canton, between the houses, across the alley, and onto the next block. *Id.* Rusty led Officer Brewster to a porch on the next block, underneath which Officer Brewster found a green jacket covered with blood. *Id.*

Detroit Police Officer Paul Glaza was Officer Perry's partner. ECF No. 15-20 at PageID.2012. He testified to many of the same facts as Officer Perry. *Id.* at PageID.2012–14. He identified Streety as the driver of the Dodge Shadow, and estimated that the Dodge Shadow was driving about 55 to 60 miles per hour. *Id.* at PageID.2012–13. Officer Glaza testified that the Dodge Shadow disregarded a stop sign at Charlevoix and a second stop sign at Vernor. *Id.* When the Dodge Shadow went through the second stop sign, it collided with another vehicle. *Id.* Officer Glaza was still about a block behind the Dodge Shadow—he was driving about 45 to 50 miles per hour and was unable to catch up to it. *Id.* When the Dodge Shadow collided with the other vehicle, the two cars went up in the air. *Id.* Officer Glaza testified that Streety stayed in his vehicle for about 5 to 10 seconds before climbing out the window and running southbound. *Id.*

On cross-examination, Officer Glaza testified that the crash occurred about one minute after Streety, Williams, and Bell got into the car. ECF No. 15-20 at PageID.2013. Officer Glaza conceded that he had never seen Streety before the crash, and had not seen him since, but testified that he had told the officer in charge that he could identify the driver of the Dodge Shadow. *Id.* Officer Glaza admitted that he was never shown a photo array of suspects nor shown suspects at a live lineup. *Id.* Officer Glaza also acknowledged that he did not describe Streety wearing a green jacket—his report stated that the suspect was wearing a gray shirt. *Id.* Officer Glaza reiterated that he was about a block away when he observed Streety get in a green Dodge Shadow, and acknowledged that he was not using binoculars. *Id.* at PageID.2013–14.

Detroit Police Officer David Babcock, an evidence technician assigned to the crime lab, took samples of what he thought might be blood from the steering wheel and doorpost on the driver's side of the Dodge Shadow. ECF No. 15-20 at PageID.2014. He gave these samples to the officer in charge. *Id.* Officer Babcock also took into evidence a brown coat with suspected blood on it. *Id.*

Police Officer William Davenport was the officer in charge of the case. ECF No. 15-20 at PageID.2015. Officer Davenport testified that Officer Glaza told him that Officer Glaza could identify the Dodge Shadow driver early in the case—sometime before he dropped off defense counsel's discovery materials to counsel's

office. *Id.* Officer Davenport admitted that he never had Officer Glaza view a live lineup. *Id.* Officer Davenport was asked if he showed Officer Glaza any photographs; he responded that when Officer Glaza came into his office, he showed Officer Glaza a picture of Streety. *Id.* Officer Glaza told him that the person in the photo was the driver of the Dodge Shadow. *Id.* Officer Davenport admitted he did not make any report of that pre-trial identification. *Id.*

Kelley Dickerson was the last prosecution witness. She testified that she lived near, and witnessed, the collision. ECF No. 15-20 at PageID.2016. She saw three occupants in the Dodge Shadow. *Id.* Dickerson could not identify the driver but stated that she had seen the man at about 10:00 A.M. earlier that day, talking to a neighbor. *Id.* He was in the Dodge Shadow at that time, with an older man in the front passenger seat, and a woman in the back seat. *Id.*

The Parties stipulated that if Wayne County medical examiner, Dr. Bader Cassin were called to the stand, he would be qualified as an expert in the field of forensic pathology, and would testify that on January 22, 1996, he conducted an autopsy on the body of William Bell, a 47-year-old black male who was pronounced dead at Detroit Receiving Hospital on December 15, 1995 (the date of the crash). ECF No. 15-20 at PageID.2016. Dr. Cassin would testify that Bell's cause of death was multiple injuries sustained as a passenger of an automobile that struck another vehicle. *Id.* The toxicology report showed that the deceased tested positive for

alcohol and cocaine. *Id.* The parties also stipulated that Dr. Cassin would testify that he conducted an autopsy on Turner, and determined that he died of multiple injuries sustained as the driver of a vehicle struck by another. *Id.*

Streety was convicted by a jury and sentenced to 40 to 80 years in prison. ECF No. 15-20 at PageID.2007. His conviction was affirmed on direct appeal. *People v. Streety*, No. 200599, 1999 WL 33455051 (Mich. Ct. App. Jan. 29, 1999) (per curiam); *lv. den.*, 604 N.W.2d 684 (Mich. 1999) (table), *reconsideration den.*, 611 N.W.2d 797 (Mich. 2000) (table).

Streety filed a habeas corpus petition in this Court, which was denied on the merits. *See Streety v. Curtis*, No. 2:00-cv-72938 (E.D. Mich. Oct. 31, 2001) (Adopting Report and Recommendation of Magistrate Judge); *appeal dismissed*, No. 01-2593 (6th Cir. Apr. 30, 2002); *cert. denied*, 537 U.S. 1118 (2003) (mem.).

Back in state court, Streety filed a motion for DNA testing on October 6, 2003.[2] The prosecutor agreed to the DNA testing, and a stipulated order was entered. *People v. Streety,* No. 96-001562-01-FC (Wayne Cty. Cir. Ct., Feb. 13, 2007), ECF No. 1-1, PageID.111. Then, on July 26, 2004, Streety filed a

---

[2] Neither Streety nor Respondent provided this Court with a copy of this motion. However, the Wayne County Circuit Court docket sheet seems to indicate that Streety filed this motion on October 6, 2003. *See* ECF No. 15-1 at PageID.547. In previous filings, Streety has stated that the motion was filed either on October 8 or October 10, 2003. *See* ECF No. 15-19, PageID.1721, 1753. Giving Streety the benefit of the doubt, it appears that the motion was filed at the earliest on October 6, 2003.

post-conviction motion for relief from judgment in the Wayne County Circuit Court, *see* ECF No. 15-8, which was denied, *People v. Streety,* No. 96-001562-01-FC (Wayne Cnty. Cir. Ct., May 25, 2005), ECF No. 15-11. The Michigan appellate courts denied leave to appeal. *People v. Streety*, No. 268127 (Mich. Ct. App. Aug. 2, 2006) (order); *lv. den.*, 723 N.W.2d 881 (Mich. 2006) (mem.).

On April 24, 2007, the Forensic Science Division of the Michigan Department of State Police issued the results of the DNA testing. ECF No. 1-1 at PageID.103. A drop of blood found on paper outside the driver's side door of the Dodge Shadow contained DNA that matched Streety. *Id.* The DNA profile from a bloodstain contained on a jacket found near the scene also matched Streety. *Id.* Though no conclusive determinations were made regarding several other samples obtained from the scene, Streety could not be excluded as a potential donor to many of them. *Id.* Only one sample, DNA from blood found on the steering wheel, was determined to have come from an "unidentified male donor" and *not* from Streety. *Id.*

In 2007, Streety filed a second or successive habeas petition, which was transferred to the Sixth Circuit under 28 U.S.C. § 2244(b)(3)(A) for that Court to determine whether to permit its filing. *Streety v. Trombley*, No. 07-14504, 2007 WL 3227190 (E.D. Mich. Oct. 31, 2007) (order). The Sixth Circuit denied him permission to file a second habeas petition. *In Re Streety*, No. 07-2403 (6th Cir. July 16, 2008) (order). Interestingly, in that case, Streety claimed that he had newly

discovered evidence that an Officer Barnette would have established that he was not the driver of the Dodge Shadow. *Id.* at *1. The Sixth Circuit denied Streety permission to file a second petition because he failed to present an affidavit or testimony from Officer Barnette that would have indicated that he was not the driver of the vehicle. *Id.* at * 2.

In 2011, the Cooley Law School Innocence Project became involved in Streety's case. That year, the Cooley Innocence Project "discovered undisclosed documents in the medical examiner's file." *See* ECF No. 1 at PageID.44. Those documents included the original death certificate for Bell that denoted him as the "driver" during a car crash. *Id.* at PageID.45; *see also* ECF No. 1-1 at PageID.105. There was also an application to correct the death certificate to denote Bell as the "passenger" during the crash. ECF No. 1-1 at PageID.107.

On January 18, 2022, Streety filed a second motion for relief from judgment in the state court, raising two issues: (1) that Streety was entitled to a new trial because the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the complete medical examiner's file and (2) newly discovered DNA testing showed another man's DNA on the steering wheel of the Dodge Shadow. ECF No. 15-15 at PageID.1342, 1351.

The trial court denied the motion for relief from judgment on the merits. *People v. Streety*, No. 96-001562-01-FC (Wayne Cnty. Cir. Ct., Mar. 31, 2023),

ECF No. 15-20 at PageID.2007–27. The Michigan Court of Appeals denied leave to appeal because Streety "failed to establish that the trial court erred in denying the successive motion for relief from judgment." *People v. Streety*, No. 367674 (Mich. Ct. App. Jan. 10, 2024) (order), ECF No. 15-20, PageID.1912. The Michigan Supreme Court denied leave to appeal pursuant to Mich. Ct. R. 6.508(D). *People v. Streety*, 6 N.W.3d 394 (Mich. 2024) (mem.).

Streety then filed a motion in the Sixth Circuit for authorization to file a second or successive habeas petition, which was granted. *In Re Streety,* No. 25-1253 (6th Cir. Oct. 8, 2025) (order). In doing so, the Sixth Circuit first noted that Streety did not tie his newly discovered DNA evidence claim to any constitutional violation at trial. *Id.* at *2–3. As for the medical examiner records, which Streety did tie to a *Brady* violation, a majority of the Sixth Circuit panel concluded that he "made a prima facie showing that he can establish by clear and convincing evidence that no reasonable factfinder would have found him guilty" had the alleged constitutional error not occurred. *Id.* at *4 (citation omitted). In making that determination, the Sixth Circuit noted that the two witnesses who identified Streety as the driver had "reliability issues." *Id.*

Judge Murphy dissented from the majority ruling, concluding that the new evidence did not meet the actual innocence standard for obtaining review of a successive habeas petition. *In Re Streety,* No. 25-1253, at *4–8. Regarding the DNA

evidence, Judge Murphy conceded that the results excluding Streety as the source of the DNA from the blood on the steering wheel "might have marginally helped his defense theory," but he pointed out that "the rest of the new DNA evidence would have fatally undermined it." *Id.* at *7. Judge Murphy noted that:

> The lab did not test only the blood found on the steering wheel. It also tested several other items. And the results showed that Streety's blood matched both the blood left on a piece of paper found outside the driver-side door and the blood left on the green jacket found by the police dog searching for the culprit who had fled the scene. And it showed that Streety had most likely left his blood on the driver-side doorpost. So this new evidence would have obliterated Streety's trial defense. Recall that his counsel argued that some *unknown* man had driven the Shadow and fled the scene. And his counsel argued that Williams and the officer who identified Streety as the driver had simply mistaken him for this other man. But this new evidence confirms that Streety was at the scene of the accident. And it confirms that he was the one who fled.

*Id.* (emphasis original).

Judge Murphy also considered the evidence presented at trial:

> Streety's first § 2254 petition conceded that this trial evidence showed that Bell had been "found *sitting in the front passenger seat* of the green Shadow[.]" That admission made good sense. It comported with Williams's testimony identifying Bell as the passenger and Streety as the driver. It comported with the testimony of another driver who witnessed the accident and saw a man (later identified as Bell) in the passenger seat with his head bowed down. It comported with the testimony of a police officer who indicated that the male in the passenger's seat (later identified as Bell) was found unresponsive and pushed up against the dashboard. And it comported with the testimony of a second police officer who identified Streety as the driver who exited the vehicle through the driver-side window and ran away on foot.
>
> Because the physical evidence leaves no doubt that Bell was found unresponsive sitting in the passenger seat, how could he have driven the car? For Streety's belated theory to work, he would have to explain

> this problem. And he has not even tried to do so. I am no expert in physics. But it strikes me as implausible that the force from the same accident would have thrust Williams *forward* out the windshield (landing her on the street) while thrusting Bell to the *right* (landing him in the passenger seat) and Streety to the *left* (landing him in the driver seat). Bell was also not found lying haphazardly in the passenger seat as if the force had thrown him there. Rather, as Streety's own petition recounts, he was "sitting" in that seat. Even if the force could have flung Bell into the passenger seat, what are the chances that he would have landed perfectly in a sitting position? And how could the two men have been thrust in opposite directions? Besides, if Streety had been the innocent passenger in all of this, why did he flee on foot?
>
> * * *
>
> And while Streety must make only a "prima facie showing" that he could meet this actual innocence test, *id.* § 2244(b)(3)(C), nothing he has introduced leaves me questioning his guilt. I respectfully dissent.

*Id*., at * 7–8 (record citations omitted).

Streety now seeks a writ of habeas corpus on the following grounds: (1) the trial court erred in denying him a new trial when he established that the police and prosecutor withheld exculpatory evidence regarding the medical examiner's initial report identifying Bell as the driver of the Dodge Shadow, and (2) the trial court erred in denying Streety's motion for a new trial when the DNA test results showed another man's blood on the steering wheel. ECF No. 1. Respondent answered the petition, ECF No. 14, and Streety has replied, ECF No. 17.

## II. DISCUSSION

### A. Statute of Limitations

Respondent contends that Streety's claims are barred by the statute of limitations found in 28 U.S.C. § 2244 (d)(1). ECF No. 14 at PageID.508–21. Streety

responds that his petition is timely, or in the alternative, that he is entitled to equitable tolling of the statute of limitations. ECF No. 17 at PageID.2578–87. This Court finds that the petition is untimely.

28 U.S.C. § 2244(d) imposes a one-year statute of limitations on petitions for habeas relief. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Although not jurisdictional, the one-year limitations period "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). Moreover, although the Sixth Circuit did grant Streety permission to file a successive habeas petition under 28 U.S.C. § 2244(b), it is not up to a federal court of appeals to determine whether a successive habeas petition is untimely. *See In re McDonald*, 514 F.3d 539, 543–44 (6th Cir. 2008) Instead, that determination is left

to the district court after authorization to file a successive habeas petition has been granted by the Sixth Circuit. *Id.* Thus, this Court must determine whether or not the petition is timely.

Begin with the statute of limitations for filing habeas corpus actions provided in 28 U.S.C. § 2244(d)(1)(A), which expires one year after the conclusion of "direct review." That period includes the 90-day period for seeking certiorari with the U.S. Supreme Court. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Here, the Michigan Supreme Court denied Streety's motion for reconsideration of their decision to deny his application for leave to appeal on April 21, 2000. *Streety*, 611 N.W.2d 797. Therefore, Streety's judgment became final on July 20, 2000, when the time for petitioning the U.S. Supreme Court expired. *Thomas v. Straub*, 10 F. Supp. 2d 834, 835 (E.D. Mich. 1998). Streety therefore had until July 20, 2001, to timely file a habeas petition. He did so, and that petition was denied on the merits.[3] *Streety*, No. 2:00-cv-72938 (E.D. Mich. Oct. 31, 2001).

---

[3] A petition for federal habeas review is not an "application for state post-conviction or other review" within the meaning of 28 U.S.C. § 2244(d)(2) that tolls the statute of limitations. *See Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (quoting § 2244(d)(2)). The statute of limitations was therefore not tolled during the time that Streety's first habeas petition was pending in the federal court. Nor was it tolled during the time that Streety sought a certificate of appealability with the Sixth Circuit after his first petition was denied. *See e.g. Hackney v. Woods*, No. 2:13-CV-370, 2014 WL 3698151, at *1 (W.D. Mich. July 25, 2014).

Streety's current petition does not relate back to that first habeas petition for purposes of the limitations period. An amended habeas petition filed beyond the one-year deadline will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition, *Mayle v. Felix*, 545 U.S. 644, 664 (2005), and the amended petition is filed in the same case, *see Watkins v. Stephenson*, 57 F.4th 576, 580 (6th Cir. 2023) (Civil "Rule 15's text contemplates that the relevant filings will arise in the same case. It does not say that an amendment can 'relate[ ] back to the date' of any pleading filed anywhere" (quoting FED. R. CIV. P. 15(c)(1)). Accordingly, Streety's timely first habeas petition has no bearing on the timeliness of his current petition, which is plainly beyond the one-year period in § 2244(d)(1)(A).

Next, § 2244(d)(2) provides that the time during which a properly filed application for state post-conviction relief or other collateral review is pending shall not be counted towards the period of limitations contained in the statute. *See McClendon v. Sherman,* 329 F.3d 490, 493–94 (6th Cir. 2003). A Michigan prisoner's timely motion for DNA testing qualifies as a properly filed post-conviction motion under 28 U.S.C. § 2244(d)(2). *See Kares v. Morrison*, 77 F.4th 411, 418–19 (6th Cir. 2023).

Streety, however, filed this motion for DNA testing with the trial court on October 6, 2003—well after the one-year limitations period expired in July 2001. A

state court post-conviction motion that is filed after the limitations period expired cannot toll the limitations period, because there is no period left to be tolled. *See Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003); *see also Parker v. Renico*, 105 F. App'x 16, 18 (6th Cir. 2004) (order) (habeas petitioner's second motion for relief from judgment did not toll limitations period because it was filed after the limitations period expired); *Beamon v. Brown*, No. 2:22-CV-12178, 2023 WL 4095231, at *4 (E.D. Mich. June 20, 2023) (assuming that petitioner's motion for DNA testing qualified as a properly filed post-conviction motion, it would not render petitioner's habeas petition timely because it was filed with the state court some nine months after the limitations period expired). Streety's motion for DNA testing and his two motions for relief from judgment, all filed after the limitations period passed, do not toll or revive the limitations period. His petition is therefore untimely.

Streety argues that his petition is not time-barred because his claims rely on newly discovered evidence that delayed the running of the limitations period. Under 28 U.S.C.§ 2244(d)(1)(D), the one-year limitations period begins running when the factual predicate for a claim could have been discovered through due diligence by the habeas petitioner. *See Ali v. Tenn. Bd. of Pardon & Paroles*, 431 F.3d 896, 898 (6th Cir. 2005). Importantly, this period begins when the factual predicate for a claim *could have* been discovered through the exercise of due diligence, not when it was *actually* discovered by a petitioner. *See Redmond v. Jackson*, 295 F. Supp. 2d 767,

771 (E.D. Mich. 2003). And the time period begins to run pursuant when a habeas petitioner could have discovered the important facts, not when the petitioner recognizes the facts' legal significance. *Id*. Significantly, "§ 2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Id.* "Rather, it is the actual or putative knowledge of the pertinent facts of a claim that starts the clock running on the date on which the factual predicate of the claim could have been discovered through due diligence, and the running of the limitations period does not await the collection of evidence which supports the facts, including supporting affidavits." *Id.* at 772. A habeas petitioner has the burden of proof in persuading a federal court that he exercised due diligence in searching for the factual predicate of the habeas claims. *See Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002). Lastly, newly discovered information "that merely supports or strengthens a claim that could have been properly stated without the discovery . . . is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (quoting *Rivas v. Fischer*, 687 F.3d 514, 535 (2nd Cir. 2012)).

Streety first argues that the prosecutor violated his due process rights by withholding the medical examiner's report and initial death certificate listing Bell as the driver of the Dodge Shadow. ECF No. 1 at PageID.4–6. Suppression of evidence

favorable to the defendant does violate due process if the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady*, 373 U.S. at 87. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 683. In *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999), the Supreme Court articulated the three elements of a *Brady* claim: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) the "evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).

Streety argues that the limitations period for his *Brady* claim began on December 10, 2021, when Ruth Carter, who was the assistant prosecutor on his murder case, reviewed documents that had been provided to her by the Cooley Innocence Project, including an autopsy report and a death certificate stating that Bell was the driver. Carter stated: "Had I had these documents at the time of Streety's trial I would have provided them to defense counsel as they go to the issue of identity

of the driver of the Dodge Shadow and are favorable to the defense." ECF No. 1-1, PageID.114–15.

However, Streety's view of his *Brady* claim is too narrow. Recall that in 2011, the Cooley Innocence Project requested the medical examiner's file. ECF No. 1 at PageID.44–45. On April 9, 2012, the Cooley Innocence Project learned that the medical examiner's file did not contain the medical examiner's "reports or autopsy photos." ECF No. 1-1 at PageID.112. Therefore, Streety should have been aware of the factual basis of his *Brady* claim, at the latest on April 9, 2012, when he was informed, through the Cooley Innocence Project, that his trial file did not contain the medical examiner's report or any autopsy photographs. *See, e.g.*, *Willis v. Jones*, 329 F. App'x 7, 17 (6th Cir. 2009) ("[T]he statute of limitations begins to run when the petitioner actually discovers the facts underlying the *Brady* claim."). Any additional affidavits in support of his *Brady* claim—including Carter's affidavit—are cumulative, and therefore do not delay the running of the limitations period. *See Jefferson*, 730 F.3d at 547. Because Streety had sufficient evidence to raise a *Brady* claim more than one year prior to filing his second post-conviction motion, his current petition is untimely with respect to this claim. *See e.g.*, *Souter v. Jones,* 395 F.3d 577, 587–88 (6th Cir. 2005).

Turning to the DNA claim: on April 24, 2007, the Forensic Science Division of the Michigan Department of State Police issued a report detailing the results of

the DNA testing, including the evidence that an unknown male's blood was found on the steering wheel of the Dodge Shadow. ECF No. 1-1 at PageID.103. The statute of limitations began to run on Streety's DNA claim on that date. *See, e.g.*, *Ramos-Cruz v. Carrau-Martinez*, 627 F. Supp. 3d 114, 129–30 (D.P.R. 2022). Because Streety did not raise this claim with the state courts until he filed his motion for relief from judgment almost fifteen years later, this claim is likewise untimely.

Finally, Streety argues that the statute of limitations should be equitably tolled. Equitable tolling is available if a petitioner makes a credible showing of actual innocence under the standard enunciated in *Schup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare[.]" *Id.* "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S. at 329). For an actual innocence exception to be credible under *Schlup*, a habeas petitioner must support his allegations of constitutional error "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

The Sixth Circuit has held that evidence is "new" for the purposes of determining whether a habeas petitioner establishes his actual innocence to toll the

limitations period, "so long as it was not presented at trial." *Hubbard v. Rewerts*, 98 F.4th 736, 743 (6th Cir. 2024). Moreover, to qualify for the actual innocence exception to the statute of limitations, a habeas petitioner must present evidence of factual innocence, not mere legal insufficiency. *Id.* "This means that a petitioner may not pass through the equitable gateway by simply undermining the state's case. Rather, he must demonstrate that he *factually* did not commit the crime." *Id.* (emphasis original).

Streety argues that medical examiner's report and the initial death certificate, which list Bell as the driver of the Dodge Shadow, as well as the DNA test showing an unidentified male's blood on the steering wheel, establish his innocence because this evidence demonstrates that Bell was the driver of the vehicle. But the medical examiner was not a witness to the collision. The information contained within his report and the initial death certificate regarding who may or may not have been the driver of the vehicle is therefore hearsay evidence. In the context of proving actual innocence, hearsay is "presumptively unreliable," especially in the post-conviction context. *Bell v. Howes*, 701 F. App'x 408, 412 (6th Cir. 2017); *see also Davis v. Bradshaw*, 900 F.3d 315, 327 (6th Cir. 2018) (noting that hearsay statements were "presumptively less reliable than direct testimony" (citation omitted)). In addition, the DNA evidence did not establish that Streety was actually innocent of the crime, in light of the extensive additional evidence establishing his identity as the driver—

discussed below. *See Thornton v. Forshey*, No. 21-3012, 2021 WL 5276758, at *4 (6th Cir. Nov. 12, 2021).

Streety has not established that his current petition is timely under any subsection of § 2244, nor has he established that he is entitled to equitable tolling. Therefore, his petition is untimely.

**B. Merits of Streety's Habeas Petition**

Respondent also contends that Streety's successive habeas petition should be dismissed pursuant to 28 U.S.C. § 2244(b)(4), because his claims fail to satisfy the requirements for filing a second or successive habeas petition. ECF No. 14 at PageID.521–30. This Court agrees.

28 U.S.C. § 2244(b)(2) states:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Sixth Circuit has granted Streety permission, pursuant to § 2244(b)(3)(A), to file this second petition. *In Re Streety,* No. 25-1253 (6th Cir. Oct. 8, 2025) (order). However, the Sixth Circuit Court of Appeals' order is only a determination by the Sixth Circuit that he has made a prima facie showing that the application satisfied the requirements of 28 U.S.C. § 2244. *See Ferrazza v. Tessmer*, 36 F. Supp. 2d 965, 973 (E.D. Mich. 1999). "'Prima facie' in this context means simply sufficient allegations of fact together with some documentation that would 'warrant a fuller exploration in the district court.'" *In re Lott*, 366 F.3d 431, 433 (6th Cir. 2004) (order) (internal quotation marks and citation omitted). Such a "'prima facie showing' . . . is not a difficult standard to meet." *Id.* at 432. After meeting this standard, this Court must still review the merits of a petitioner's claim and "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." *See In re McDonald*, 514 F.3d at 543 (quoting 28 U.S.C. § 2244(b)); *see also Tyler v. Cain*, 533 U.S. 656, 661, n.3 (2001).

A successive habeas petitioner must "establish by clear and convincing evidence that, but for the constitutional errors at trial, no reasonable juror would have convicted him." *Keith v. Hill*, 78 F.4th 307, 315 (6th Cir. 2023); 28 U.S.C. § 2244(b)(2)(B)(ii). In assessing the adequacy of a successive habeas petitioner's showing of actual innocence, a court must consider the "evidence as a whole," which

means "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

Here, it is true that the medical examiner's report and the initial death certificate listed Bell as the driver of the Dodge Shadow. The DNA report prepared by the State Police indicates that the DNA from the steering wheel was from an unidentified male, not Streety. This evidence certainly could have raised a reasonable doubt in jurors' minds that Streety was the driver.

However, the evidence presented at trial also included testimony from Williams and Officer Glaza identifying Streety as the driver of the Dodge Shadow. An eyewitness, Hawkins, also saw Bell sitting in the front *passenger* seat. And although Streety's DNA was not found on the steering wheel, his DNA was recovered from blood on paper outside the driver's side door of the fleeing car. This evidence tends to support the prosecution's theory that he was the driver of the vehicle. And Officer Brewster testified that his tracking dog traced a scent from the driver's seat to beneath a porch, where a green jacket covered in blood was found. Streety's new evidence shows that a bloodstain on that jacket matched his DNA. Not only does this indicate Streety may have been the driver, it also establishes that he fled the scene of the crime and attempted to hide his identity by discarding his jacket. Under Michigan law, flight is relevant to consciousness of guilt. *Johnson v. Burke*,

903 F.2d 1056, 1062 (6th Cir. 1990). Streety has not explained why he would have fled the scene of the collision and discarded his bloody jacket if he was not the driver. Lastly, as Judge Murphy noted in his dissent, Streety does not explain how the force from the same accident would have thrust Williams forward out of the windshield while thrusting Bell to the right (moving him from the driver's seat to the passenger seat) and Streety to the left (moving him from the passenger seat to the driver's seat). *See In Re Streety*, No. 25-1253, at *7–8 (6th Cir. Oct. 8, 2025) (order) (Murphy, J., dissenting).

Considering the trial evidence and the new evidence, this Court finds that Streety cannot show that every reasonable juror would have reasonable doubt about his guilt. *See Keith*, 78 F.4th at 317. Taken together, the evidence described above show that jurors faced with "the evidence as a whole" could reasonably convict Streety again today, even considering the new evidence. Therefore, Streety has not shown by clear and convincing evidence that "no reasonable factfinder" could find him guilty of these two murders, requiring denial of his habeas petition. *Id.* at 318.

## III. CONCLUSION

This Court denies the petition for writ of habeas corpus, ECF No. 1, with prejudice.

This Court also denies a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

For the reasons stated in this opinion, this Court denies Streety a certificate of appealability because jurists of reason would not find debatable this Court's dismissal of his successive habeas petition. *See Campbell v. Curtis*, No. 2:07-CV-14607, 2008 WL 4104346, at *8 (E.D. Mich. Aug. 29, 2008). However, if Streety chooses to appeal this Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); *see Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED WITH PREJUDICE** and a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **GRANTED**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: November 25, 2026